IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| DONATUS I. AMARAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:07CV396-HEH |
| | ) |
| VIRGINIA STATE UNIVERSITY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**
(Awarding Defendants Summary Judgment)

This is a Title VII suit involving claims of unlawful retaliatory discrimination against a university professor. It is currently before the Court on Defendants' Motion for Summary Judgment. Both parties have filed memoranda of law in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process at this stage. Finding no material issues of fact in dispute, the Court will grant Defendants' Motion for Summary Judgment.

Plaintiff Donatus I. Amaram has been a Professor of Management at Virginia State University's ("VSU") School of Business since 1984. Amaram believes he has been the subject of several acts of retaliation by senior officials at VSU. His Complaint, filed *pro se* on July 2, 2007, names VSU, Eddie N. Moore, Jr., University President; W. Eric Thomas, Provost; David Bejou, Dean of the School of Business; Venkat Mummalaneni,

Chairman of the Department of Management and Marketing; and Cheryl Mitchem, Assistant Dean of the School of Business as defendants.

Amaram's Complaint is the most recent in a succession of disputes between a VSU professor and the VSU administration resulting in civil rights actions in this Court.[1] Amaram himself has offered deposition testimony in one of his colleague's lawsuits against the university and has also previously filed an unsuccessful Title VII action against VSU. *See Olusoga v. Va. State Univ.*, 3:05CV678 (E.D.Va. 2005); *Amaram v. Va. State Univ.*, 476 F. Supp. 2d 535 (E.D.Va. 2007) (awarding VSU summary judgment).

The underlying event that prompted Amaram's first suit was VSU's failure to reappoint him as Chairman of the Department of Management and Marketing. Contending that he was not reappointed as a result of either discrimination based on his age or national origin, or as retaliation for his support of Professor Olusoga's lawsuit, Amaram brought an action in this Court seeking relief under Title VII. *Id.* at 542-43. Finding that Amaram's reappointment was not the product of unlawful discrimination but was instead the "foreseeable and reasonable consequence of his decision to ignore his administrative responsibilities," Chief Judge Spencer awarded VSU summary judgment. *Id.* at 544.

---

[1] A search of the Court's records reveals at least 10 discrimination suits by VSU Professors in recent years. Four professors currently have lawsuits against the university on the Court's docket.

The events underlying Amaram's immediate Complaint bear a striking resemblance to his previous suit. In Count I, he lists eight actions taken by VSU which he believes constitute unlawful retaliation for his role in the Olusoga case, the filling of his EEOC charge, or the initiation of his first discrimination suit. The alleged retaliation, according to Amaram, consisted of (1) receiving an unsatisfactory annual performance evaluation for 2005/2006, (2) receiving an evaluation of not Academically Qualified, (3) being placed in post-tenure review status, (4) denying his request for sabbatical leave, (5) placing several unjustified letters of reprimand in his personnel file, (6) singling him out for an unannounced class visit, (7) withholding renewal of his employment contract for 65 days, (8) and altering his contract to allow an outside consultant to assess his research quality. In addition to his Title VII retaliation claim, Amaram has alleged several violations of state law. The defendants have submitted a consolidated motion seeking summary judgment.

As a preliminary matter, Amaram has improperly named the individual VSU officials as defendants in his Title VII claim. Title VII provides a cause of action against an "employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 2000e-5(b). An employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b); 42 U.S.C. § 12111(5)(A). The Fourth Circuit has "expressly held that Title VII does not provide a remedy against individual defendants who do not qualify as 'employers.'" *Baird*

3

*v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999). Supervisors are not liable under Title VII. *Id.*; *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998). VSU is Amaram's employer for the purposes of Title VII and is the only proper defendant named in Count I.

Turning to Amaram's specific grievances, the Court does not have jurisdiction to hear claims regarding four of the eight allegedly adverse employment actions listed in Amaram's Complaint because he has not exhausted requisite administrative remedies. A plaintiff must fully exhaust applicable administrative remedies before turning to the courts for relief. *Myers v. Bethlehem Shipbldg. Corp.*, 303 U.S. 41, 50 (1938). "Until administrative recourse is exhausted, suit is premature and must be dismissed." *Cavalier Tel., LLC v. Va. Elec. & Power Co.*, 303 F.3d 316, 322 (4th Cir. 2002). Among Title VII's administrative remedies is the requirement that an employee define the scope of his complaint by alleging discrimination in an EEOC charge within 300 days from the date of the discrimination before proceeding to court. *See* 42 U.S.C. § 2000e-5; *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). The charge requirement limits the scope of any subsequent litigation. *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Id.*

Amaram filed an EEOC charge of discrimination as a precursor to this suit on

4

December 20, 2006.² (Def. Ex. 12) The charge Amaram filed specifically and clearly claimed he was denied sabbatical leave on April 5, 2006 and given a low performance evaluation on November 21, 2006 in retaliation for his previous EEOC charge filed on March 9, 2006. Amaram has therefore preserved his right to litigate the rationale behind his low performance evaluation and the denial of his sabbatical leave. Amaram's claim that he was illegally rated not academically qualified and placed in post-tenure review status is part and parcel of his poor performance evaluation claim. Those alleged adverse actions will be considered simultaneously with the grounds for the poor annual evaluation. Amaram has procedurally defaulted, however, on the four other allegedly retaliatory actions listed in Count I. These actions were not listed in the EEOC charge and more than 300 days has now elapsed since the date of the alleged discrimination.³ These four actions allegedly taken by VSU are not sufficiently related to the low performance evaluation and denial of sabbatical leave that they would have been discovered and properly investigated by the administrative agency in response to Amaram's EEOC charge. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) (finding "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct

---

²A Right to Sue letter was issued by the EEOC on March 30, 2007.

³Amaram has failed to exhaust administrative remedies with regard to his belief that placing letters of reprimand in his file, observing his class unannounced, withholding his contract renewal for 65 days, and altering the contract so that he could be evaluated by an outside consultant represent unlawful retaliation.

5

than the central factual allegations in his formal suit").

The balance of Amaram's Title VII claim is therefore an allegation that VSU unlawfully retaliated against him by giving him an unsatisfactory performance evaluation in November 2006 and by denying his request for sabbatical leave in April 2006. In order to prevail on his Title VII retaliation claim, Amaram is required to show: (1) that he engaged in protected activity; (2) that adverse employment action was taken against him; and (3) that a causal connection existed between the first two elements. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). Assuming that a *prima facie* case is established, the burden then shifts to VSU "to rebut the presumption of retaliation by articulating a legitimate non-retaliatory reason for its actions." *Id.* (internal quotation marks omitted). The burden then shifts back to Amaram "to show that the reason is mere pretext for retaliation by proving both that the reason was false, and that discrimination was the real reason for the challenged conduct." *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997).

Amaram is unable to make a *prima facie* case of retaliation with regard to his performance evaluation for the 2005/2006 academic year, because the evaluation was not an adverse employment action under the law. "Regardless of the route a plaintiff follows in proving a Title VII action, . . . the existence of some adverse employment action is required." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). "An adverse employment action is a discriminatory act which adversely affects the terms,

conditions, or benefits' of the plaintiff's employment." *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001) (internal quotation marks omitted).

In 2006, the VSU School of Business was attempting to obtain accreditation from the Association to Advance Collegiate Schools of Business. (Bejou Decl. at 2.) Maintaining a high standard for tenured faculty is a vital component of the accreditation process, so the school utilizes an outside consultant to annually evaluate the recent research of each faculty member. A faculty member whose published research is lacking in quality or quantity is rated not academically qualified by the outside consultant, and that professor automatically receives an unsatisfactory annual evaluation. *Id.* at 3. This process was approved by the Board of Visitors and has been utilized within the School of Business since 2003. *Id.* at 2.

Amaram was rated not academically qualified by the outside consultant in 2006 due to deficiencies in his published research. (Navratil Decl. at 8) The consultant's rating caused Amaram to receive, at least initially, an unsatisfactory annual evaluation. (Bejou Decl. at 3.) The consequence of this poor evaluation was Amaram's placement in post-tenure review status and a reduced salary. Amaram appealed his performance evaluation, however, to a faculty committee with the power to alter the evaluation. The faculty committee disagreed with the consultant on the quality of Amaram's research and upgraded Amaram's performance rating from unsatisfactory to noteworthy. *Id.* This resulted in Amaram receiving a retroactive pay increase and restoration of the conditions

7

of his faculty position and tenure to its pre-evaluation status. *Id.* The Court therefore concludes that Amaram has not suffered an adverse employment action. *See Gustin v. W. Va. Univ.*, 63 Fed. Appx. 695, 700 (4th Cir. 2003) (finding that university professor's temporary removal from a committee was not an adverse employment action when the university reversed its decision after hearing from the faculty).

Even if the Court were to assume, *arguendo*, that Amaram had made a *prima facie* case, VSU has submitted sufficient evidence concerning the accreditation process and the outside consultant's methodology, to demonstrate a legitimate, non-retaliatory reason for Amaram's deficient annual evaluation. Amaram has not presented evidence to rebut this showing.[4] Accordingly, summary judgment will be awarded to VSU as to Amaram's unsatisfactory performance evaluation of November 2006.

The only remaining Title VII claim is Amaram's contention that the denial of his 2006 request for sabbatical leave was in unlawful retaliation for his previous EEOC charges, lawsuit, or role in Olusoga's lawsuit. Amaram submitted a request to Dr. Mummalaneni, Chair of the Department of Management and Marketing, to take a paid sabbatical from January 8 through August 13, 2007. Assuming, without deciding, that denial of a request for sabbatical leave could be construed as an adverse employment

---

[4] The only evidence Amaram has submitted to counter VSU's motion is an affidavit in which he lays out his personal belief that the alleged adverse employment actions were retaliation. The affidavit closely resembles his Complaint and adds little substantive evidence to the overall record. VSU also notes that Amaram's affidavit was filed incorrectly because it lacked a signature, but the Court will consider the affidavit in light of the little impact it carries.

action, the burden shifts to VSU to put forward a legitimate, non-retaliatory reason for the denial.

Amaram submitted the request for sabbatical on a standard one-page VSU form entitled "Request for Leave." (Def. Ex. 13.) He checked the line labeled as "sabbatical" and included a one-line statement in support of his request, namely that he planned to "use the time to engage in research in my teaching field." *Id.* The request was denied by Mummalaneni on March 31, 2006. In a letter to School of Business Dean David Bejou, Mummalaneni explained that he believed Amaram's sabbatical, if approved, would create a shortage of faculty within the School of Business during the 2006-07 academic year. Mummalaneni also cited lack of available financial resources to pay both Amaram while on leave and the professor hired to cover his teaching load in the interim. Lastly, Mummalaneni stressed Amaram's failure to adequately justify the leave request by submitting details regarding the benefits VSU would gain as a result of Amaram's sabbatical. (Def. Ex. 14.)

Bejou agreed with Mummalaneni and disapproved Amaram's request on April 3, 2006. Bejou forwarded a letter to Provost W. Eric Thomas explaining that his disapproval was based on Mummalaneni's recommendation, including several unsatisfactory performance issues raised by Mummalaneni, the absence of "any benefit to Dr. Amaram, the School of Business, and VSU," and finally the lack of available funds to finance the leave. (Def. Ex. 15.)

9

On April 14, 2006, VSU's Sabbatical Leave Subcommittee, consisting of three faculty members from outside the School of Business, also recommended disapproval of the sabbatical request. The committee believed the purpose of the sabbatical was "unclear" and that Amaram had provided insufficient information for the committee to assess the benefits of the proposed sabbatical to Amaram and to VSU. (Def. Ex. 16.) The request was next reviewed and disapproved by an additional faculty committee on April 17, 2006, by Provost Thomas on April 21, 2006, and was ultimately disapproved by VSU President Eddie N. Moore, Jr. on April 24, 2006. (Def. Ex. 13.)

It is clear from the evidence that Amaram's leave request went through a thorough administrative review process before ultimately being denied and that the denial was the product of legitimate, non-retaliatory decisions by VSU officials. VSU has adequately shown that the denial of Amaram's request was based on his failure to persuade the administration that any benefit gained from the sabbatical would be outweighed by the negative impact on VSU's financial and teaching resources. Amaram steadfastly claims in his pleadings and in a deposition submitted by Defendants, that VSU's stated reasons for denying his request were pre-textual and part of a larger effort by VSU administrators to remove Amaram from the faculty.

Amaram has not put forward any evidence beyond his own impressions to rebut VSU's evidence and to support his retaliation theory. The Court also finds it unlikely that the two faculty committees which recommended disapproval of Amaram's leave request,

10

one of which consisted of a biology professor, a physical education professor, and a psychology professor, were complicit in the alleged scheme to get rid of him. Amaram's repeated assertions alone are not sufficient to create a material issue of triable fact in light of the evidence presented by VSU. Accordingly, Defendants will be granted summary judgment as to Amaram's claim that his request for sabbatical leave was the result of unlawful retaliation.

Having decided that Defendants are entitled to summary judgment on Amaram's Title VII claim, the Court declines to exercise supplemental jurisdiction over the remaining state law claims contained in his Complaint. *See* 28 U.S.C. § 1367; *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).

For the preceding reasons, Defendants are awarded summary judgment on Amaram's Title VII claim and the remainder of the Complaint is dismissed without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

                                                            /s/
                                        Henry E. Hudson
                                        United States District Judge

Date: March 31, 2008
Richmond, VA